1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER KELLER, a New Hampshire Citizen; CURTIS KELLER, a New Hampshire Citizen; and LINDA KELLER, a New Hampshire Citizen, | Case No. 14-cv-2168 BAS (RBB) |
| Plaintiffs, | **ORDER:** |
| v. | **1. GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART ASSOCIATION FOR BETTER LIVING AND EDUCATION INTERNATIONAL'S, NARCONON INTERNATIONAL'S, AND NARCONON WESTERN UNITED STATES' MOTION TO DISMISS; AND** |
| NARCONON FRESH START d/b/a SUNSHINE SUMMIT LODGE; ASSOCIATION FOR BETTER LIVING AND EDUCATION INTERNATIONAL; NARCONON INTERNATIONAL; NARCONON WESTERN UNITED STATES and DOES 1–100, ROE Corporations I–X, inclusive, | **2. GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART NARCONON FRESH START'S MOTION TO DISMISS** |
| Defendants. | **[ECFs 10, 11]** |

On September 11, 2014, Plaintiffs Christopher Keller ("Christopher"), Curtis Keller ("Curtis"), and Linda Keller ("Linda") commenced this suit against Defendants Narconon Fresh Start d/b/a Sunshine Summit Lodge ("Fresh Start"),

1  Association for Better Living and Education International ("ABLE"), Narconon
2  International ("NI"), and Narconon Western United States ("Western") arising out
3  of Christopher's experience in Fresh Start's drug rehabilitation program. Plaintiffs
4  allege the following causes of action: (1) breach of contract; (2) fraud; (3)
5  negligent misrepresentation; (4) violation of the California Unfair Competition
6  Law ("UCL", Cal. Bus. & Prof. Code §§ 17200, *et seq.*); and (5) violation of 18
7  U.S.C. § 2520, a federal statute prohibiting wiretapping.

8       NI, Western, and ABLE together moved to dismiss the Complaint against
9  them. ECF 10. Plaintiffs opposed (ECF 16) and NI, Western, and ABLE replied
10  (ECF 18). Fresh Start moved separately to dismiss the Complaint. ECF 11.
11  Plaintiffs opposed (ECF 15) and Fresh Start replied (ECF 20). The Court finds
12  these motions suitable for determination on the papers submitted and without oral
13  argument. *See* Civ. L.R. 7.1(d.1). For the following reasons, the Court **GRANTS**
14  **IN PART WITH LEAVE TO AMEND** and **DENIES IN PART** NI's, Western's,
15  and ABLE's motion to dismiss, and **GRANTS IN PART WITH LEAVE TO**
16  **AMEND** and **DENIES IN PART** Fresh Start's motion to dismiss. ECFs 10, 11.

17  **I.  BACKGROUND**

18       Plaintiffs claim that on or about April 28, 2014, Linda began searching the
19  internet for a drug rehabilitation facility for her son, Christopher. Compl. ¶ 16,
20  ECF 1. They claim several unrelated websites directed them to Fresh Start
21  representative Josh Penn ("Penn"). *Id.* ¶¶ 17–18. Plaintiffs claim Fresh Start
22  recorded Linda's calls. *Id.* at ¶ 123.

23       Penn allegedly made the following false statements: Fresh Start's program
24  was scientifically and medically proven to be effective; Christopher would be
25  supervised by a doctor or nurse while undergoing detoxification; Fresh Start would
26  provide Christopher extensive drug and addiction counseling; Fresh Start staff was
27  properly trained to treat persons with addiction; Fresh Start's treatment program
28  had a success rate of 76%; and Christopher needed to be enrolled immediately

1    because there were very limited spots available. Compl. ¶¶ 19–21, 26, 50–55.

2    Plaintiffs also claim Penn stated the program cost $33,000. *Id.* at ¶ 25. Linda and

3    Curtis decided to place Christopher in the Fresh Start program based on these

4    representations. *Id.* at ¶ 22. Linda and Curtis executed the contract, which stated

5    that the Fresh Start program was secular in nature. *Id.* at ¶ 22, Ex. A.

6           Plaintiffs claim there were numerous empty beds when Christopher entered

7    the program; Christopher was not supervised by a doctor or nurse when he

8    underwent detoxification; Christopher shared a small dirty room with two other

9    people; Christopher witnessed the presence of alcohol and drugs in Fresh Start's

10   facility; Christopher was aware of people having sexual relations in Fresh Start's

11   facility while he was there; Fresh Start was staffed with recent patients who were

12   still at risk of relapse; and Christopher never received any counseling on substance

13   abuse. Compl. ¶¶ 27–30, 64–65. Christopher claims he left Fresh Start early

14   because he did not feel safe and because Fresh Start's staff was unfit to treat him.

15   *Id.* at ¶ 68.

16          Plaintiffs also state that Fresh Start's program is actually the Narconon

17   Treatment Program, which uses course materials designed by the Church of

18   Scientology. Compl. ¶¶ 31–34. Fresh Start allegedly had Christopher study

19   material that was copied directly out of Scientology scriptures and which had

20   almost no information about substance abuse. *Id.* at 34–37. Plaintiffs claim Fresh

21   Start directed Christopher to perform "Training Routines[,]" such as asking another

22   patient "do fish swim?" for hours on end. *Id.* at ¶ 39. They also claim Christopher

23   underwent a Scientology ritual called the "Purif." disguised by Fresh Start as "New

24   Life Detoxification[.]" *Id.* at ¶¶ 42–43. Under this ritual, each day Fresh Start

25   required patients to exercise vigorously, ingest large dosages of niacin and a

26   "vitamin bomb", and then spend five hours in a sauna at temperatures between 160

27   and 180 degrees Fahrenheit. *Id.* at ¶¶ 45–46. Plaintiffs assert Fresh Start is using

28   the Narconon program to introduce Scientology to "unwitting patients seeking

1  drug rehabilitation." *Id.* at ¶ 60.

2      Plaintiffs further allege that Fresh Start is a mere instrumentality of NI,

3  ABLE, and Western, and that the latter defendants "govern and control nearly

4  every aspect of Narconon Fresh Start's business activities." Compl. ¶¶ 70–71.

5  Plaintiffs claim NI requires individual centers, such as Fresh Start, to abide by

6  manuals NI prints. *Id.* at ¶ 72. The manuals prohibit Fresh Start from demoting,

7  transferring, or dismissing a permanent staff member without approval from NI;

8  Fresh Start staff members may file "Job Endangerment Chit[s]" with NI if they

9  believe Fresh Start has given orders or denied materials that make work difficult;

10  and Fresh Start employees are required to report misconduct to NI, which is then

11  investigated by both NI and Western. *Id.* at ¶¶ 73–76. Plaintiffs further claim that

12  NI requires Fresh Start to send detailed weekly reports containing statistics of more

13  than 40 metrics, which both NI and Western review. *Id.* at ¶ 78.

14      Finally, Plaintiffs state NI, Western, and ABLE are intimately involved in

15  Fresh Start's operations in the following ways: they require Fresh Start to seek

16  their approval before circulating promotional materials and starting new websites;

17  they assist Fresh Start in creating advertising materials and dictate the materials'

18  content; they conduct "tech inspections" at Fresh Start to determine whether Fresh

19  Start is delivering the Narconon program correctly; they work with individual

20  centers like Fresh Start on legal issues, including patient requests for refunds and

21  complaints to the Better Business Bureau; and they exercise final authority over

22  Fresh Start relating to hiring and firing, delivery of services, finances, advertising,

23  training, and general operations. *Id.* at ¶¶ 79–80, 83–88.

24  **II.    LEGAL STANDARD**

25      A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

26  Procedure tests the legal sufficiency of the claims asserted in the complaint.  Fed.

27  R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).  The

28  court must accept all factual allegations pleaded in the complaint as true and must

1   construe them and draw all reasonable inferences from them in favor of the

2   nonmoving party.  *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir.

3   1996).  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed

4   factual allegations, rather, it must plead "enough facts to state a claim to relief that

5   is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A

6   claim has "facial plausibility when the plaintiff pleads factual content that allows

7   the court to draw the reasonable inference that the defendant is liable for the

8   misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*,

9   550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent

10  with' a defendant's liability, it stops short of the line between possibility and

11  plausibility of 'entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

12  550 U.S. at 557).

13      "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

14  relief' requires more than labels and conclusions, and a formulaic recitation of the

15  elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (quoting

16  *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alteration in original).  A court need

17  not accept "legal conclusions" as true.  *Iqbal*, 556 U.S. at 678.  Despite the

18  deference the court must pay to the plaintiff's allegations, it is not proper for the

19  court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged

20  or that defendants have violated the . . . laws in ways that have not been alleged."

21  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459

22  U.S. 519, 526 (1983).

23      Generally, courts may not consider material outside the complaint when

24  ruling on a motion to dismiss.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*,

25  896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  However, documents specifically

26  identified in the complaint whose authenticity is not questioned by parties may also

27  be considered.  *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995)

28  (superceded by statutes on other grounds).  Moreover, the court may consider the

1  full text of those documents, even when the complaint quotes only selected

2  portions.  *Id.*  It may also consider material properly subject to judicial notice

3  without converting the motion into one for summary judgment.  *Barron v. Reich*,

4  13 F.3d 1370, 1377 (9th Cir. 1994).

5      As a general rule, a court freely grants leave to amend a dismissed

6  complaint.  Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when

7  "the court determines that the allegation of other facts consistent with the

8  challenged pleading could not possibly cure the deficiency."  *Schreiber Distrib.*

9  *Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

10  **III.   DISCUSSION**[1]

11      A. *Plaintiffs Have Alleged an Agency Relationship Between Defendants*

12      NI, Western, and ABLE move for dismissal of all claims against them,

13  arguing Plaintiffs' experience was solely with Fresh Start and that the Complaint's

14  allegations are insufficient to establish an agency relationship between them and

15  Fresh Start. ECF 10-1, 9–12. Defendants rely on *Patterson v. Domino's Pizza,*

16  *LLC*, 60 Cal.4th 474 (2014) for support.

17      In *Patterson*, the California Supreme Court discussed principals of agency at

18  length in the context of a franchisor-franchisee relationship. Under California law,

19  a franchisor is the franchisee's principal when the franchisor has the right to

20  control the "means and manner" of the franchisee's operations. *Patterson*, 60

21  Cal.4th at 495 (quoting *Cislaw v. Southland Corp.*, 4 Cal. App. 4th 1284, 1288

22  (1992)). "[C]ontrol over factors such as hiring, direction, supervision, discipline,

23  discharge, and relevant day-to-day aspects of the workplace behavior of the

24  franchisee's employees[]" support a finding of agency. *Id.* at 497–98. Both

25

26  ───────────────
[1] Fresh Start requests the Court take judicial notice of an order written by Judge Gonzalo Curiel in

27  a similar case. ECF 11-2. The Court **GRANTS** Fresh Start's request. ECF 11-2. *See* Fed. R. Evid. 201(b)(2) (a court may take judicial notice of a fact that "can be accurately and readily determined

28  from sources whose accuracy cannot reasonably be questioned"); *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 966 F.Supp.2d 1018, 1024 n.4 (C.D. Cal 2013).

1  Plaintiffs and Defendants agree the principles articulated in *Patterson* are
2  applicable here. ECF 10-1, 10–12; ECF 16, 4–7.

3       Plaintiffs allege the following: (1) NI has ultimate control over the
4  demotion, transfer, or dismissal of a permanent Fresh Start employee; (2) Fresh
5  Start employees may file grievances with NI concerning misconduct by Fresh
6  Start; (3) NI and Western investigate reported misconduct concerning Fresh Start;
7  (4) NI requires Fresh Start to send detailed weekly reports, which are reviewed by
8  NI and Western; (5) ABLE, NI, and Western require Fresh Start to seek
9  authorization before circulating new advertising; (6) ABLE, NI, and Western
10 conduct "tech inspections" at Fresh Start to ensure employees are correctly
11 conducting the Narconon program; and  (7) ABLE, NI, and Western instruct Fresh
12 Start employees exactly how they want Fresh Start to provide services. Accepting
13 these allegations as true and drawing all inferences in favor of Plaintiffs, the
14 Complaint sufficiently alleges that ABLE, NI, and Western control the "means and
15 manner" of Fresh Start's operations. Plaintiffs have thus alleged an agency
16 relationship between ABLE, NI, Western and Fresh Start.

17      B. *Plaintiffs' Breach of Contract Claim*

18       ABLE, NI, and Western argue that Plaintiffs' breach of contract claim must
19 be dismissed as to them because they were not parties to the contract and because
20 Plaintiffs did not adequately allege an agency relationship between them and Fresh
21 Start. ECF 10-1, 12–13. They further argue that even if they are principals of Fresh
22 Start, they are not liable because the contract did not contain their names or state
23 the "fact of agency." *Id.* (citing *Van Haaren v. Whitmore*, 2 Cal.App.2d 632, 634
24 (1934)). As discussed above, Plaintiffs have adequately alleged an agency
25 relationship between the agent, Fresh Start, and the principals, ABLE, NI, and
26 Western.[2] In *Van Haaren*, individual defendants were liable for the unpaid balance

27

28 _____
[2] ABLE, NI, and Western also reiterate their argument that there is no agency relationship between them and Fresh Start. The Court has already addressed this argument. *See supra*, Section III.A.

1  of a note. These individual defendants claimed they had acted as agents of a

2  principal, but because the note did not explicitly refer to the existence of the

3  principal, they were individually liable for the note's payment. However, *Van*

4  *Haaren* does not apply to the present case. While *Van Haaren* does support finding

5  agents liable for a principal's failure to pay, it is silent on the principal's liability.

6        Fresh Start argues that Christopher has no standing to bring the breach of

7  contract claim because he was not a party to the contract. ECF 11-1, 5–6. Fresh

8  Start also argues Curtis and Linda have not alleged an injury, an essential element

9  of breach of contract. *Id.* First, a third party beneficiary has standing to sue for

10  enforcement or breach of a contract. *See H.N. and Frances C. Berger Found. v.*

11  *Perez*, 218 Cal. App. 4th 37, 43 (2013). The contract here was clearly made for the

12  benefit of Christopher. Second, the Complaint states the treatment program cost

13  $33,000. Because Fresh Start allegedly did not perform on the contract, Linda and

14  Curtis may recover for Fresh Start's breach.

15        Plaintiffs' Complaint states a claim for breach of contract. Defendants'

16  motions to dismiss Plaintiffs' breach of contract claim are **DENIED**. ECFs 10, 11.

17      C. *Plaintiffs' Fraud Claim*

18        All Defendants contend that Plaintiffs have failed to meet Federal Rule of

19  Civil Procedure 9(b)'s heightened pleading requirements for fraud claims. ECF 10-

20  1, 13–16; ECF 11-1, 6–10. The elements of fraud include (1) a misrepresentation;

21  (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5)

22  resulting damage. *Khan v. CitiMortgage, Inc.*, 975 F. Supp. 2d 1127, 1139 (E.D.

23  Cal. 2013). To meet Rule 9(b)'s requirements, Plaintiffs must have pled the "who,

24  what, when, where, and how[,]" of the misrepresentations, so that Defendants are

25  aware of the particular misconduct alleged and can prepare an adequate response.

26  *Id.* at 1139–40 (citations omitted).

27        Plaintiffs allege Fresh Start employee Josh Penn made the previously

28  described misrepresentations during a phone call made around April 28, 2014.

1 Compl. ¶¶ 16–21, 96. These allegations satisfy the "who, what, when, where, and

2 how" of the fraud. Plaintiffs further allege that Penn knowingly made the

3 misrepresentations, and that they relied on them, suffering injury as a result.

4 Compl. ¶¶ 22, 97–100.  These allegations are sufficient to put Defendants on notice

5 of their alleged misconduct. Plaintiffs have therefore adequately pled their fraud

6 claim. *See Amato v. Narconon Fresh Start*, No. 3:14–cv–0588, 2014 WL 5390196,

7 at *5–*6 (S.D. Cal. Oct. 23, 2014) (applying similar analysis to similar facts).

8 Defendants' motions to dismiss Plaintiff's fraud claim are **DENIED**. ECFs 10, 11.

9      D. *Plaintiffs' Negligent Misrepresentation Claim*

10       "The elements of negligent misrepresentation are (1) the misrepresentation

11 of a past or existing material fact, (2) without reasonable ground for believing it to

12 be true, (3) with intent to induce another's reliance on the fact misrepresented, (4)

13 justifiable reliance on the misrepresentation, and (5) resulting damage." *Apollo*

14 *Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243

15 (2007). Defendants argue Plaintiffs have failed to allege that the misrepresentations

16 were made without reasonable ground for believing them to be true. ECF 10-1, 17;

17 ECF 11-1, 8–9.

18       Plaintiffs allege that Penn falsely represented that the treatment program had

19 a 70% to 80% success rate and that Penn directed them to Fresh Start's website,

20 which stated the treatment program had a 76% success rate. Compl. ¶ 21. Plaintiffs

21 further allege that ABLE, NI, and Western must authorize all of Fresh Start's

22 advertising and websites before they "go live." *Id.* at ¶ 79. Finally, Plaintiffs allege

23 that an NI official had knowledge in 2009 that the 76% success rate claim was not

24 scientifically proven. *Id.* at ¶ 54. Taken together, these allegations are sufficient to

25 support Plaintiffs' negligent misrepresentation claim because NI had no reasonable

26 basis to believe its success rate was 76%, and it authorized Fresh Start to make that

27 claim on its website. Plaintiffs have thus pled sufficient facts to support this claim.

28 Defendants' motions to dismiss Plaintiffs' negligent misrepresentation claim are

1  therefore **DENIED**. ECFs 10, 11.

2      E.  *Plaintiffs' UCL Claim*

3      Defendants argue Plaintiffs lack standing to bring their UCL claim. ECF 10-

4  1, 18–20. To have standing to bring a UCL claim, a person must have "suffered

5  injury in fact and[ ]lost money or property as a result of the unfair competition."

6  Cal. Bus. & Prof. Code § 17204. Under the express language of the California

7  Business and Professions Code, Christopher does not have standing to bring a UCL

8  claim because the Complaint contains no allegations that he "lost money or

9  property as a result" of Defendant's conduct. *Id.* However, Plaintiffs have alleged

10  that Curtis and Linda lost $33,000. Compl. ¶ 25. They therefore have standing to

11  bring the UCL claim.

12      The remedies available under the UCL are limited to injunctive relief and

13  restitution. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144

14  (2003) (citations omitted). Standing for injunctive relief requires plaintiffs to show

15  an actual injury and "a real and immediate threat" the injury will occur again.

16  *Bates v. United Postal Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citations

17  omitted). Plaintiffs lack standing to pursue injunctive relief because they do not

18  allege there is any risk they will use Defendants' services again. This does not

19  require dismissal of Plaintiffs' UCL claim, however, because Curtis and Linda may

20  seek restitution.

21      Christopher lacks standing to bring the UCL claim. Curtis and Linda possess

22  standing to bring the UCL claim seeking restitution. Accordingly, Defendants'

23  motions to dismiss Curtis' and Linda's UCL claim are **DENIED**. ECFs 10, 11.

24      F.  *Plaintiffs' Claim for Violation of 18 U.S.C. § 2520*

25      Title 18, Section 2520 of the United States Code provides: "any person

26  whose wire, oral, or electronic communication is intercepted, disclosed, or

27  intentionally used *in violation of this chapter* may in a civil action recover from the

28  person or entity. . . ." (emphasis added). It is not "unlawful under th[e same]

chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d).

Under the express language of these statutes, only one party need consent to recording. Plaintiffs do not allege that Defendants did not consent to recording. Further, Plaintiffs do not allege that Defendants recorded calls for the purpose of committing a criminal or tortious act. They do allege that Defendants recorded the calls so they could instruct employees on how to improve their sales technique, which is not a criminal or tortious purpose. *See* Compl. ¶ 121. Accordingly, Plaintiffs have failed to state a claim under 18 U.S.C. § 2520 and Defendants' motions are **GRANTED** as to this claim. ECFs 10, 11.

## IV.   CONCLUSION & ORDER

In light of the foregoing, the Court **ORDERS**:

1. Christopher's UCL claim is **DISMISSED** with leave to amend;

2. Plaintiffs' UCL injunctive relief is **DISMISSED** with leave to amend;

3. Plaintiffs' claim for violation of 18 U.S.C. 2520 is **DISMISSED** with leave to amend; and

4. Defendants' motions are otherwise **DENIED**. ECFs 10, 11.

5. Plaintiff's Complaint (ECF 1) remains operative except for the dismissed claims, but Plaintiffs may amend it **within 21 days** of this Order.

**IT IS SO ORDERED.**

Dated:  April 22, 2015

Hon. Cynthia Bashant
United States District Judge